**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

VIALLE GROUP, B.V.,

        Plaintiff,

vs.

GREEN WING GROUP, INC. and
SEAN P. BARRETT,

        Defendants.

_____/

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES
## AND INJUNCTIVE RELIEF

      Plaintiff, Vialle Group, B.V., ("Plaintiff"), hereby files this action against Defendants Green Wing Group, Inc., ("Green Wing") and Sean P. Barrett, ("Barrett"), (collectively, the "Defendants").  Defendants are promoting, advertising, offering for sale, selling and distributing goods bearing confusingly similar and identical imitations of Plaintiff's distinctive registered trademarks within this judicial district including, but not limited to, through a fully interactive Internet website with domain name, www.vialleusa.com, registered under Defendant Barrett's name (the "Subject Domain Name").  In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

      1.      This is an action for federal trademark infringement, false designation of origin, cybersquatting, common law unfair competition, and declaratory judgment pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1125(a) , the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and The All Writs Act, 28 U.S.C. § 1651(a).  Accordingly, this Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's

state law claim because that claim is so related to the federal claims that they form part of the same case or controversy.

2. The amount in controversy in this action exceeds $75,000.00, excluding interest and costs.

3. Defendant Green Wing is subject to personal jurisdiction in this judicial district because it is incorporated in the state of Florida and has its principal place of business in this district. Furthermore, Defendant Green Wing directs business activities towards, and conducts business with, consumers in this judicial district through, at a minimum, the fully interactive Internet website operating under the Subject Domain Name.

4. Defendant Barrett is subject to personal jurisdiction in this judicial district because he is domiciled in this district and directs business activities towards and conducts business with consumers in this judicial district through, at a minimum, the fully interactive Internet website operating under the Subject Domain Name.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants reside, engage in infringing activities, and cause harm within this judicial district.

## **THE PARTIES**

6. Plaintiff Vialle Group, B.V., is a corporation organized and existing under the laws of The Netherlands, having its principal place of business at Leemkuil 7, 5626 EA Eindhoven, The Netherlands.

7. Defendant Green Wing is a corporation organized and existing under the laws of the state of Florida, having its principal place of business at 3130 SE Gran Park Way, Stuart, Florida 34997.

8. Defendant Barrett is an individual who, upon information and belief, resides in Stuart, Florida. Barrett is the President and sole director of Defendant Green Wing.

## COMMON FACTUAL ALLEGATIONS

9.       Plaintiff owns the federally registered trademark "VIALLE" for equipment and parts for vehicle engines and LPG (or liquefied petroleum gas) tanks for cars, trucks, buses, motorcycles, and boats, Reg. No. 3,712,143, registered on the Principal Register of the United States Patent and Trademark Office ("PTO") on November 17, 2009 (the "Word Mark").  A copy of the federal registration certificate for the Word Mark is attached as Exhibit A.

10.      Plaintiff owns the federally registered trademark "  " for equipment and parts for vehicle engines and LPG tanks for cars, trucks, buses, motorcycles, and boats, Reg. No. 3,699,025, registered on the Principal Register of the PTO on October 20, 2009 (the "Design Mark").  Collectively, the Word Mark and the Design Mark are referred to herein as the "Marks".  A copy of the federal registration certificate for the Design Mark is attached as Exhibit B.

11.      The original registrant of the Marks, Vialle Alternative Fuel Systems B.V., ("Vialle") transferred all rights, title and interest in the Marks to Plaintiff Vialle Group, B.V. on June 5, 2015.

12.      The Word Mark was registered internationally on December 20, 1996, and has been in continuous use in international commerce outside the United States since that time by companies related to the Plaintiff, the first of which was founded in 1967, which are headquartered in The Netherlands.

13.      The Design Mark was registered internationally on February 1, 2001, and has been in continuous use in international commerce outside the United States since that time by companies related to the Plaintiff, the first of which was founded in 1967, which are headquartered in The Netherlands.

14.      A copy of a webpage from the international website of the Plaintiff and its related companies illustrating the use of the Marks in connection with equipment and parts for vehicle engines and LPG tanks for cars, trucks, buses, motorcycles, and boats is attached as Exhibit C.

15.      For decades, companies related to the Plaintiff have spent significant sums of money to promote the Marks in international commerce to members of the trade, customers, and potential customers.  The promotion and

use of the Marks has resulted in the Plaintiff enjoying significant international goodwill associated with the Marks.

16.     In search of an American distributor for its products, Vialle first began communicating and negotiating with Defendant Barrett in the fall of 2011.

17.     These communications and negotiations resulted in a framework of terms and conditions the parties agreed to in principle on September 23, 2013 that were memorialized and finalized in written form on February 22, 2014, when Vialle entered into an Exclusive Distribution Agreement (the "Agreement") with Defendant Green Wing.  Defendant Barrett signed and initialed the Agreement on behalf of Green Wing.  The Agreement, in sum, provided that Vialle would grant to Green Wing an exclusive license to assemble, sell and distribute all Vialle products in the United States, Canada, and Mexico.

18.     In the Recitals, the Agreement provided that Defendant Green Wing would be Vialle's sole distributor in the United States through its subsidiary corporation, VialleUSA, to be formed upon execution of the Agreement, and that Defendant Green Wing would be permitted to use the brand name VIALLE in its company name "until this Agreement is terminated or the exclusive rights expire." In paragraph 1.5 of the Agreement, it was further provided that "Green Wing is allowed to change her company name into 'VIALLE USA' or similar during the validity of this Agreement or contractual agreements succeeding this Agreement, or set up a subsidiary with such name."

19.      In paragraph 2.1, the Agreement provided that "[t]he sole license rights…will transfer from VIALLE to GREENWING at the signing of the Agreement *and after receipt in escrow by the escrow agent of the $1,000,000 initial order deposit for the purchase of VIALLE product and covers all IP including…use of technology covered under patents, granted at the time of signing this agreement….*"  (Emphasis added.)  Paragraph 2.3 states that the "IP Rights in section 2.1 and 2.2 remain with VIALLE…."

20.     In consideration for this exclusive license with a reputable, well-established and internationally known automotive fuel systems manufacturer and distributor such as Vialle, which Green Wing contractually recognized in

paragraph 1.1 of the Agreement as "the technology leader in the field of Direct and Indirect Liquid LPG injection", Green Wing was required to pay into escrow $1,000,000 as an initial order deposit (as referenced in paragraph 2.1 of the Agreement.)  The sole license rights to Vialle's intellectual property under the Agreement in the United States, Canada, and Mexico, including the Marks and Vialle's patents on LPG injection technology, would not pass to Green Wing from Vialle until receipt in escrow by the agreed upon escrow agent of these monies.

21.    Defendants failed to make payment of any kind into escrow as required by the Agreement.

22.    Rather than terminate the Agreement, as Vialle was entitled to do in the wake of the Defendants' material breach of the Agreement's escrow requirement, Vialle and Green Wing amended the Agreement, *inter alia*, to replace the escrow requirement as follows: "[T]he parties agree that an initial order for the first 3 months of € 700,000 will be placed within 5 business days" (the "Amendment").

23.    The Amendment was signed and initialed by Defendant Barrett on April 10, 2015 on behalf of Green Wing.

24.    Despite repeated requests by Vialle, this initial order was never placed by Defendants.

25.    Once again, the Defendants had materially breached the Agreement.

26.    On October 15, 2015, Dutch counsel for the Plaintiff sent a cease and desist letter to the Defendants via courier and by e-mail (referred to herein as the "C&D Letter" and attached hereto as Exhibit D.)

27.    The C&D Letter, *inter alia*, unequivocally informed the Defendants that they were in default under the Agreement and the Amendment, that the Agreement and Amendment were dissolved and terminated, that the Defendants had no rights with regard to the Plaintiff's intellectual property, including the Marks and Plaintiff's patents that were attached to the C&D Letter as Appendix 1, and that Green Wing must immediately cease and desist from the use of the Marks and the patents, from representing to third parties that the

Defendants have exclusive rights to the Plaintiff's patents in the United States, and must transfer all domain names registered in its name containing the "sign" VIALLE (including vialleusa.com) to the Plaintiff.

28.     On October 21, 2015, the Plaintiff's Dutch counsel again corresponded with the Defendants informing them that they were in default under the Agreement, and the Amendment, and they were not entitled to delivery of the Plaintiff's intellectual property rights.  A copy of this letter is attached hereto as Exhibit E.

29.     As of the filing of this Complaint, the Defendants have, since October 21, 2015, at the latest, willfully continued to infringe, misappropriate, and misuse the Plaintiff's Marks, without authorization or license from the Plaintiff, by promoting, advertising, offering for sale, and/or selling and distributing goods bearing confusingly similar or identical imitations of Plaintiff's Marks including, but not limited to, through the Subject Domain Name website. Copies of Defendants' webpages from the Subject Domain Name website on May 19, 2016 illustrating this misuse are attached as Exhibit F.

30.     As of the filing of this Complaint, the Defendants have, since October 21, 2015, at the latest, willfully continued to misrepresent to potential customers, distributors, and members of the trade in the United States that the Defendants have exclusive rights to the Plaintiff's patents and are able to sell the products covered by these patents, and grant sublicenses to these patents to third parties, throughout the world.  To bolster these misrepresentations, the Defendants have willfully, wrongfully and fraudulently recorded a Royalty Free Right of Use License with the PTO on August 20, 2015 with full knowledge that they have no legal right or interest to the Plaintiff's patents.  This was done with the deliberate intent of misleading third parties that the Defendants have rights to the Plaintiff's patents so as to financially benefit the Defendants to the detriment of the Plaintiff.

31.     Upon information and belief, Defendant Barrett formed Defendant Green Wing in September 2013, and at all times since its inception has been responsible for making the decisions for Green Wing and has actively and

knowingly controlled, directed, and caused the activities of Green Wing, including the infringing, willful, fraudulent and wrongful activities of Green Wing described herein.

32.     Due to the Defendants' unauthorized use of the Plaintiff's Marks, and the Defendants' unauthorized and fraudulent misrepresentations that they have exclusive rights to the Plaintiff's patents in the United States, as described herein, the Plaintiff has lost significant business opportunities with other American distributors and potential business partners.

33.     The Defendants have threatened litigation against New Eagle, LLC, who was in negotiations with the Plaintiff over engineering and distribution of Vialle products for the North American market, if New Eagle pursued a distribution relationship with the Plaintiff or its related companies.  The Plaintiff was made aware of this by New Eagle's president, Richard C. Swortzel, P.E., on December 19, 2015.  As stated by Mr. Swortzel in his email to Vialle personnel, "I need documentation that states Green Wing will not be involved.  Sean [Barrett] basically threatened a lawsuit if we would pursue Vialle NL for North America products…."

34.     A meeting set to take place in mid-December 2015 between Vialle personnel and Jeff Ehlers, Vice President of Power Solutions International, Inc., was canceled based on information contained on the Defendants' Subject Domain Name website that "Vialle USA, headquartered in Stuart, Florida, is the exclusive licensee and distributor for Vialle products in North America, the Caribbean, Central America, and South America."  This is a blatant falsehood that the Defendants have refused to cease and desist from conveying to the public on the Subject Domain Name website in spite of the C&D Letter and subsequent communications from Plaintiff's Dutch counsel to Defendants.  Mr. Ehlers subsequently failed to return any calls or emails from Vialle personnel, and these negotiations collapsed.

35.     Due to the willful and tortious misconduct and deceptive practices of the Defendants, the Plaintiff has suffered harm to its reputation.

36.     Due to the Defendant's willful and tortious misconduct and deceptive practices, potential American business partners have mistakenly associated Defendants with the Plaintiff as the Plaintiff's exclusive distributor of Vialle products in the United States, Canada, and Mexico.

37.     The Plaintiff has suffered injury to its goodwill and reputation, and has lost opportunities for marketing and distributing its products in the United States, Canada, and Mexico, as a result of the Defendants engaging in the activities described above.

38.     The Plaintiff has hired the law firm of Taylor, Warren & Weidner, P.A. to vindicate its rights in this action and is obligated to pay that firm a reasonable fee for its legal services.

39.     All conditions precedent to the maintenance of this action have been performed, have occurred, or have been excused or waived.

## COUNT I
## Trademark Infringement

40.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 39 above.

41.     This is an action for trademark infringement against Defendants based on Defendants' promoting, advertising, offering for sale, selling and distributing goods used in liquid petroleum gas systems for automotive vehicles bearing confusingly similar, if not identical, imitations of Plaintiff's Marks including, but not limited to, through the Subject Domain Name website registered under Defendant Barrett's name.

42.     Defendants are continuously infringing and inducing others to infringe the Plaintiff's Marks by using them to advertise, promote, and offer for sale such infringing goods.

43.     Defendants counterfeit and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' goods.

44.     Plaintiff has suffered, and continues to suffer, substantial damages not fully ascertainable at present as a result of the Defendants' infringing activities in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

45.     The Defendants' infringement was and is willful, deliberate and perpetrated with the intent of causing confusion, mistake, or deception and to reap the benefit of Plaintiff's goodwill, and justifies the assessment of increased and treble damages against them.

46.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Plaintiff.  Such injury includes, but is not limited to, the diversion of Plaintiff's potential customers and business partners and the diminution of Plaintiff's goodwill.

47.     The injuries Plaintiff will continue to suffer if Defendants are not enjoined as requested below outweighs any harm that the issuance of such an injunction may inflict upon Defendants.

48.     Plaintiff has a substantial likelihood of success on the merits of its claims in light of the Defendants' flagrant and well-documented infringement.

49.     The issuance of an injunction as requested below by Plaintiff will in all respects serve the public good in that it will discourage and prevent trademark infringement.

## COUNT II
## False Designation of Origin

50.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 39 above.

51.     Defendants have authorized infringing uses of Plaintiff's Marks in Defendants' advertisement and promotion of their infringing products. Defendants have misrepresented to members of the trade and the general consuming public that the goods being advertised and promoted by them are genuine, non-infringing goods.

52.     Defendants have damaged the Plaintiff's goodwill among members of the trade and the general consuming public by misrepresenting that they were

and are solely authorized to distribute Plaintiff's products in the United States, Canada, and Mexico.

53.     These misrepresentations have caused confusion among members of the trade and the general consuming public as to the association Defendants had with Plaintiff that was terminated, at the very latest, on October 21, 2015.

54.     The Defendants have willfully and deceptively used the Plaintiff's Marks in an effort to further Defendants' position in the marketplace.

55.     Defendants' above-described actions are in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     Plaintiff has suffered, and continues to suffer, substantial damages not fully ascertainable at present as a result of the Defendants' above-described actions, and absent an entry of an injunction by this Court, the Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation.

## COUNT III
## Claim for Relief for Cybersquatting

57.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 39 above.

58.     Defendant Barrett has acted with the bad faith intent to profit from the Plaintiff's Marks and the goodwill associated with the Marks by registering and using the infringing Subject Domain Name.

59.     The Plaintiff's Marks were each distinctive at the time Defendant Barrett registered the infringing Subject Domain Name.

60.     The Plaintiff's Marks were each registered on the PTO's Principal Register at the time Defendant Barrett registered the infringing Subject Domain Name.

61.     The infringing Subject Domain Name is identical to, or confusingly similar to, the Plaintiff's Word Mark.

62.     Defendant Barrett's actions constitute cybersquatting in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

63.     Plaintiff has suffered, and continues to suffer, substantial damages not fully ascertainable at present as a result of the Defendants' infringing activities in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

64.     Plaintiff has suffered and will continue to suffer irreparable harm and injury due to the above-described activities of Defendant Barrett if Barrett and Defendant Green Wing are not preliminarily and permanently enjoined.

## COUNT IV
## Common Law Unfair Competition

65.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 39 above.

66.     This is an action against Defendants based on their promotion, advertising, distribution, sale and/or offering for sale of goods bearing marks which are virtually identical, both visually and phonetically, to Plaintiff's Marks.

67.     Defendants' infringing above-described activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of the Defendants' products, and the Defendants' association or lack thereof with the Plaintiff, by their misuse of the Plaintiff's Marks.

68.     Plaintiff has suffered, and continues to suffer, substantial damages not fully ascertainable at present as a result of the Defendants' infringing above-described activities.

69.     Plaintiff is suffering irreparable injury as a result of Defendants' actions and has no adequate remedy at law.

## COUNT V
## Declaration of Rights and Legal Relations

70.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 39 above.

71.     There is an actual and substantial case or controversy between Plaintiff and Defendants as alleged herein.

72.     The Plaintiff seeks a declaration that the Defendants have no legal right, title, license, or interest in the Plaintiff's Marks, patents, products, or assets,

of any kind, and that there is no association or relationship, exclusive or otherwise, between the Plaintiff and the Defendants by virtue of the Defendants' material breach of the Agreement and Amendment and continued willful and fraudulent misconduct as alleged herein.

73.    The Plaintiff and the Defendants have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

74.    In the absence of such a declaration, the Defendants will continue to take action harmful to the Plaintiff.

<u>**PRAYER FOR RELIEF**</u>

75.    WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief against Defendants pursuant to § 34 of the Lanham Act, 15 U.S.C. § 1116, as follows:

a.    Entry of a preliminary and permanent injunction pursuant to Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their infringing goods or services, specifically, but not limited to, those goods and services used in liquid petroleum gas systems, bearing Plaintiff's Marks; from using any logo, trade name or trademark or trade dress which may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff or its related companies that use, or have used, the Plaintiff's Marks in commerce; from falsely representing themselves as being connected with Plaintiff or its related companies that use the Plaintiff's Marks in commerce, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff or its related companies that use, or have used, the Plaintiff's Marks in commerce; from using any reproduction, counterfeit, copy, or colorable imitation of the Plaintiff's Marks

in connection with the publicity, promotion, sale or advertising of any goods or services sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods or services, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods or services as being those of Plaintiff or its related companies that use, or have used, the Plaintiff's Marks in commerce, or in any way endorsed by the Plaintiff or its related companies that use, or have used, the Plaintiff's Marks in commerce and from offering such goods in commerce; from representing to potential customers, distributors, members of the trade, or third parties of any kind that the Defendants have legal rights to the Plaintiff's patents, as listed in Appendix 1 to Exhibit D of this Complaint, and are able to sell products covered by these patents, or grant sublicenses for these patents, or are associated with the Plaintiff and its related companies in any way;  from engaging in search engine optimization strategies using colorable imitations of the Vialle name or the Plaintiff's Marks and from otherwise unfairly competing with Plaintiff or its related companies that use, or have used, the Plaintiff's Marks in commerce.

        b.      Entry of an Order requiring the Subject Domain Name, and any other domain names being used by Defendants to engage in the business of marketing, promotion, offering to sell and/or selling goods or services bearing infringements of the Plaintiff's Marks be disabled and/or immediately transferred by Defendants, their Registrars, and/or the Registries to Plaintiff's control.

        c.      Entry of an Order that, upon Plaintiff's request, the top level domain (TLD) Registry for the Subject Domain Name or its administrator place the Subject Domain Name on Registry Hold status for the remainder of the registration period for the Subject Domain Name, thus removing it from the TLD zone files maintained by the Registry which links the Subject Domain Name to the IP address where the associated website is hosted.

        d.      Entry of an Order that, upon Plaintiff's request, any Internet search engine, Web hosts, domain-name registrars and domain-name registries or administrators which are provided with notice of the injunction, cease

facilitating access to any or all websites through which Defendants engage in the promotion, advertising, offering for sale and/or sale of goods bearing counterfeits and/or infringements of the Plaintiff's Marks.

      e.      Entry of an Order that, upon Plaintiff's request, the Internet Corporation for Assigned Names and Numbers ("ICANN") shall take all actions necessary to ensure that the top level domain Registry or its administrator for the Subject Domain Name facilitate the transfer and/or disable the Subject Domain Name.

      f.      Entry of an Order that the Defendants are to take all necessary action with the PTO in order to have the recordation of the Royalty Free Right of Use License, as averred in paragraph 30 herein, expunged, deleted, or otherwise stricken from the records of the PTO.

76.      WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of monetary relief against Defendants, jointly and severally, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117, as follows:

      a.      all the profits, gains and advantages Defendants derived from their violations of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) and (d), and that such sums be trebled pursuant to 15 U.S.C. § 1117;

      b.      all actual damages suffered by Plaintiff as a result of Defendants' violations of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) and (d), and that such sums be trebled pursuant to 15 U.S.C. § 1117;

      c.      in the alternative, statutory damages pursuant to 15 U.S.C. § 1117;

      d.      costs and interest on the foregoing sums and costs.

77.      WHEREFORE, Plaintiff demands a declaratory judgment setting forth the rights and legal relations between the Plaintiff and the Defendants, to wit, that the Defendants have no legal right, title, license, or interest in the Plaintiff's Marks, patents, products, property, or assets, of any kind, and that there is no legal or commercial association or relationship, exclusive or otherwise, between the Plaintiff and the Defendants.

78.      Plaintiff demands an award of attorney fees pursuant to

U.S.C. § 1117 or other applicable law.

79.   Plaintiff demands an award of such other relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ *Brian D. Hancock*
Brian D. Hancock (Fla. Bar No. 107341)
bhancock@twwlawfirm.com
TAYLOR, WARREN & WEIDNER, P.A.
1823 N. 9th Avenue
Pensacola, FL 32503
Telephone: (850) 438-4899
Facsimile: (850) 438-4044
Attorneys for Plaintiff Vialle Group, B.V.